UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| **HUNTINGTON INGALLS INCORPORATED** ) <br> ) <br> **Petitioner,** ) <br> ) <br> v. ) <br> ) <br> **UNITED STEEL, PAPER AND FORESTRY,** ) <br> **RUBBER, MANUFACTURING, ENERGY,** ) <br> **ALLIED INDUSTRIAL AND SERVICE** ) <br> **WORKERS INTERNATIONAL UNION** ) <br> ) <br> **Respondent.** ) <br> ) <br> <u>Serve</u>:  David R. Jury, General Counsel ) <br>         60 Boulevard of the Allies, Room 807 ) <br>         Pittsburgh, PA 15222 ) <br> ) <br> **UNITED STEEL WORKERS LOCAL 8888** ) <br> ) <br> **Respondent.** ) <br> ) <br> <u>Serve</u>: Charles Spivey, President ) <br>         4306 Huntington Ave ) <br>         Newport News, VA 23607 ) | **Case No.:** _____ |

## PETITION TO PARTIALLY VACATE ARBITRATION AWARD

Petitioner Huntington Ingalls Incorporated, Newport News Shipbuilding Division ("NNS" or "Petitioner"), by and through its undersigned counsel, pursuant to the Federal Arbitration Act, 9 U.S.C. § 10 and § 11, petitions this Court for an order partially vacating the Expedited Arbitration award of Arbitrator Herbert Fishgold ("Arbitrator Fishgold") dated June 18, 2021. A true and accurate copy of the Expedited Arbitration opinion and award is attached as **Exhibit 1**. In support of this Petition, NNS states as follows:

## PARTIES

1. NNS is a company organized under the laws of the Commonwealth of Virginia with its principal place of business located at 4101 Washington Ave, Newport News, VA, 23607. NNS is an employer under the National Labor Relations Act, 29 U.S.C. § 152(2).

2. Respondent United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (hereinafter referred to as the "Union") is a labor organization with its principal place of business in Pittsburgh, Pennsylvania. Respondent United Steelworkers Local 8888 ("Local Union") is a local affiliated union of the Union, with its principal place of business in Newport News, Virginia.

## JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to Section 301 of the Labor Management Relations Act (29 U.S.C § 185) and also under the Federal Arbitration Act (9 U.S.C § 10 and § 11).

4. Jurisdiction and venue properly rest with this Court because the proceeding concerns a contract between an employer and labor organization which represents employees in an industry affecting commerce and because the Union has duly authorized officers and agents engaged in representing and acting in the interest of employee members residing and working within the Eastern District of Virginia, specifically, employees residing and working at the facility in Newport News, Virginia as set forth above.

5. The Union is the certified, exclusive bargaining representative for certain NNS employees, including the employee who was at the center of the underlying arbitration at issue.

6. NNS and the Union are parties to a certain collective bargaining agreement dated July 10, 2017 ("CBA"), a true and authentic copy of which is attached as **Exhibit 2**. The CBA was executed by representatives of both the Union and the Local Union.

## FACTS

**I.  Background**

7. NNS is the largest nuclear shipyard in the United States, with more than 135 years of shipbuilding expertise.

8. David Hooper ("Mr. Hooper") is a member of the Union and employee of NNS, working in the inspection job function of NNS's M53 Department.

9. Article 12 of the CBA provides a grievance process to resolve any complaints or disputes between employees and NNS (the "Grievance Process") arising under the CBA. Pursuant to the Grievance Process, Mr. Hooper filed four separate grievances between April 12, 2018 and April 30, 2019. Ex. 2, Art. 11, § 2, Step 1. A true and accurate copy of the grievance record is attached as **Exhibit 3**.

10. The CBA provides certain "Pay Grades" with corresponding compensation rates that NNS employees such as Mr. Hooper may attain based on their years of experience, qualifications, and other factors listed therein. Ex. 2, Art. 31.

11. In Mr. Hooper's first grievance (No. 90827) and second grievance (No. 90828), both filed on April 12, 2018, he alleged that NNS violated the CBA by removing his qualifications needed to progress from Pay Grade 15 to Pay Grade 16, and Mr. Hooper requested the remedy of being afforded the opportunity to attain the requirements necessary to obtain Pay Grade 16. In his third grievance (No. 90272), filed on March 4, 2019, Mr. Hooper alleged that a supervisor harassed him and created a hostile work environment. In his fourth grievance (No. 90184), filed on April

30, 2019, Mr. Hooper grieved that NNS revoked certain qualifications that he needed in order to obtain a higher Pay Grade without giving him a chance to requalify, thus hindering him from making the higher pay rate provided under Pay Grade 15.

12. After receiving his supervisor's response and pursuant to the Grievance Process, the Local Union then appealed Mr. Hooper's grievances—Grievances 90827, 90828, 90272, and 90184 (each, a "Grievance," and collectively, the "Grievances")—to the Supervisor of Employee Relations. After Mr. Hooper submitted the necessary forms to appeal the four Grievances, the Grievance Committeeperson and the Supervisor of Employee Relations then prepared and submitted Mr. Hooper's and NNS's respective positions as part of the grievance record, as required under the Grievance Process. *See* Ex. 2, Art. 11, § 2, Step 1; Ex. 3 at NNS 000008-30.

13. The Supervisor of Employee relations denied all four of Mr. Hooper's Grievances—denying his fourth and latest grievance on June 18, 2019. After Mr. Hooper exhausted his remaining appeals under the Grievance process, the Union notified NNS on January 27, 2021 of its intent to arbitrate the same. Accordingly, the Grievances were submitted to Expedited Arbitration in accordance with the CBA, and the arbitration was handled by a Union representative.

14. Upon agreement by the parties, Mr. Hooper's four grievances were consolidated for the Expedited Arbitration hearing before Arbitrator Fishgold. Arbitrator Fishgold set forth Mr. Hooper's position against NNS as follows:

> that there was a hostile work environment, and that [Mr. Hooper] was deprived an opportunity to receive the necessary training to meet the qualifications for moving from the Pay Grade 15 Inspector position to the Pay Grade 16 Inspector Specialist position as established in the CBA, and that he was unjustifiably demoted from his Pay Grade 15 Specialist position to Pay Grade 14.

Ex. 1, pg. 1.

15. Arbitrator Fishgold framed the issue to resolve as follows: "Whether [NNS][1] had proper cause, under the CBA, to determine that [Mr. Hooper] failed to [obtain] the required qualifications for a Pay Grade 15 Inspector Specialist position and to demote him to a Pay Grade 14. If so, what should the remedy be."

16. In rendering his Expedited Arbitration opinion, Arbitrator Fishgold awarded Mr. Hooper the following:

> 1. The Grievant shall receive back pay as generated by the difference in Pay Grade 15 from Pay Grade 14 for the period of June 2019 to March 20, 2021.
> 2. From March 31, 2021, he shall be classified as Pay Grade 14.
> 3. He shall be afforded a timely and good faith opportunity to obtain his MT and PT qualifications for a Pay Grade 15 position. In order to expedite that opportunity, he should be offered the opportunity to be reassigned to day shift where more hourly opportunities to train on the appropriate machinery is available.

Ex. 1, pg. 5.

17. Back pay is not an available remedy under the CBA for disputes concerning an employee's Pay Grade qualifications and is only available where an arbitrator finds that NNS improperly disciplined or discharged an employee. Ex. 2, Art. 11, § 4. Specifically, Art. 11 § 4 provides "[i]f it is determined by an arbitrator that an employee was suspended or discharged without just cause, he may fashion an appropriate remedy which may include reinstatement and back pay." There was no finding in the Expedited Arbitration opinion and award that Mr. Hooper had been disciplined or discharged, much less improperly so. Ex. 1.

---

[1] The paragraph in Arbitrator Fishgold's Opinion framing the issue for arbitration contains grammatical errors. The only logical reading of this sentence replaces the "the Employee," with, "the Company," as it makes no sense for the employee to determine his own qualifications. Similarly, nowhere in the grievance record or Mr. Fishgold's Opinion is the issue of whether Mr. Hooper failed to "mention" the required qualifications raised. The issue for expedited arbitration was whether NNS improperly interfered with Mr. Hooper's ability to obtain the required qualifications or whether it improperly revoked the qualifications.

5

18. In addition, neither Mr. Hooper nor the Union on his behalf requested back pay as a form of relief for Mr. Hooper's grievances². *See* Ex. 3; **Exhibit 4**, ¶¶ 6-7 (Affidavit of Amy Guerin, NNS Manager, Labor Relations).

19. Because Arbitrator Fishgold exceeded his authority by awarding back pay to Mr. Fishgold from June 2019 to March 31, 2021, on June 25, 2021, NNS filed its "Employer's Motion for Reconsideration of Extracontractual Award of Backpay" ("Motion for Reconsideration"), a true and accurate copy of which is attached as **Exhibit 5**.

20. In its Motion for Reconsideration, NNS requested only that the arbitrator remove the backpay remedy from the award. Ex. 5.

21. On July 4, 2021, Arbitrator Fishgold denied NNS's Motion for Reconsideration, stating that he had no authority to reconsider his award unless the Union joined NNS in its motion, which it did not. A true and accurate copy of Arbitrator Fishgold's July 4, 2021 email where he denied NNS's Motion for Reconsideration is Attached as **Exhibit 6**.

22. Because Arbitrator Fishgold exceeded his authority under the CBA by awarding Mr. Hooper the extracontractual relief of back pay from June 2019 to March 31, 2021, NNS files this Petition to Partially Vacate the Arbitration Award and respectfully asks that this Court vacate solely the backpay award.

**II.   Relevant CBA Provisions**

23. With respect to an employee's ability to obtain a Specialist – Pay Grade 15 or higher classification, the CBA provides:

> The Company may place employees in job functions in a Specialist Job Family (i.e. Specialist – Pay Grade 15, Specialist – Pay Grade 16, or Specialist – Pay Grade 17) based on production need, as exclusively determined by the Company (at the

---

² The only time back pay was raised during the Expedited Arbitration as a remedy was after the Union's closing statement when Arbitrator Fishgold asked whether the Union wanted backpay for Mr. Fishgold and Union Advocate Harris replied with, "yes." Ex. 4, ¶ 7.

> appropriate Division Director level or higher), **and provided that the employee possesses the defined requirements** for the particular job function. If the Company has determined that production needs require such placement **and the employee possesses the defined requirements** for the particular job function the Company shall make its decision on the basis of seniority, provided the employee has not had a disciplinary action of a final warning or greater within the preceding twelve (12) months.

Ex. 2, Art. 15, § 6(c) (emphasis added).

24. With respect to the employee's failure to maintain the requirements for a higher job classification, the CBA provides:

> Employees may be moved to a lower job/pay classification in a Specialist Job Family or reassigned from a Specialist Family because of either a change in production needs or **because the employee fails to maintain the defined requirements in the higher job classification**… In the event an employee **fails to maintain the defined requirements of his current job classification**, through no fault of the Company, the employee shall be reassigned **and reduced to the rate the employee held immediately prior to his placement in the job classification for which the employee no longer qualifies**. Nothing in this provision requires the Company to take steps to maintain an employee's defined job requirements where there are no production needs to continue the employee's assignment in the particular job classification.

Ex. 2, Art. 15, § 6(d), (d)(ii).

25. The CBA also discusses the employee's opportunity to obtain qualifications required for specific Pay Grades, the CBA provides:

> Employees shall progress from Pay Grade 14 to Specialist – Pay Grade 15, from Specialist - Pay Grade 15 to Specialist - Pay Grade 16, from Specialist - Pay Grade 16 to Specialist - Pay Grade 17 **in accordance with** production needs and the skills, abilities and **qualifications of each employee as defined by the checklist for the Specialist job function and pay grade**, until the maximum number of employees in each job function and pay grade is achieved as set forth in Appendix B(1) of this Agreement. During the first week of each calendar quarter, any employee in Pay Grade 14 who is in a job function that is eligible for progression into a Specialist – Pay Grade 15, 16 or 17 job function may request to review their checklist with their immediate supervisor. The supervisor will then individually review the check list with each requesting employee. **If the employee lacks one or more proficiencies, skills, qualifications, or other defined requirements, they may request to be considered for an opportunity to obtain the defined requirement(s)**. The

>Company will consider such requests. In so doing, the Company shall consider production requirements, operational needs and training requirements.

Ex. 2, Art. 31, § 2(a) (emphasis added).

26. With respect to the arbitrator's authority, the CBA provides:

>[t]he arbitrator shall act in a judicial, not legislative, capacity. He shall regard the provisions of this Agreement as the basic principles and fundamental law governing the relationship of the parties and shall **have no power to change, add to, or delete from its terms**. The arbitrator shall consider grievances involving the application and interpretation of the provisions of this Agreement.

Ex. 2, Art. 12, § 4 (emphasis added).

## CAUSE OF ACTION – ARBITRATOR EXCEEDED HIS POWERS AND AWARDED RELIEF UPON A MATTER NOT SUBMITTED TO HIM

27. NNS asserts as if fully restated herein the allegations contained in paragraphs 1 through 26.

28. Arbitrator Fishgold exceeded his power under the CBA in rendering his June 18, 2021 Award by awarding Mr. Hooper back pay from June 2019 to March 31, 2021. Arbitrator Fishgold compounded his error when he denied NNS's Motion for Reconsideration.

29. Arbitrator Fishgold's award of "back pay as generated by the difference in Pay Grade 15 from Pay Grade 14 for the period of June 2019 to March 31, 2021" not only contradicts his own conclusions but exceeds the scope of his authority under the CBA. Ex. 1, pg. 5; Ex. 2, Art. 12, § 4.

30. First, Arbitrator Fishgold correctly found that "since May 2017, [Mr. Hooper] ha[d] not performed any functions of a Pay Grade 15, **and would [thus] have to requalify in all the requirements** set forth in the Pay Grade 15 Inspector Specialist Checklist. Contractually, the Arbitrator **ha[d] no authority to reinstate him to that classification**." Ex. 1, pg. 4 (emphasis added).

8

31. Second, and consistent with Arbitrator Fishgold's finding that he had no authority to reinstate Mr. Hooper to a Pay Grade 15 classification because Mr. Hooper did not have the necessary requirements during June 2019 to March 31, 2021, the CBA provides that in order to obtain a Pay Grade 15 and thus its corresponding pay rate, an employee must have the necessary "qualifications [sic] defined by the checklist for the Specialist job function and pay grade." Ex. 2, Art. 31, § 2(a); *see* Ex. 2, Art. 15, § 6(c) ("The Company may place employees in…Pay Grade 15…provided that the employee possesses the defined requirements…").

32. Third, the CBA is clear that the arbitrator may award back pay only as follows: "[i]f it is determined by an arbitrator that an employee was **suspended or discharged** without just cause, he may fashion an appropriate remedy which may include reinstatement and back pay." Ex. 2, Art. 11, § 4 (emphasis added). Here, the matters submitted for arbitration concerned employee qualifications, not improper suspension or discipline.

33. Accordingly, even if the Arbitrator properly concluded that NNS engaged in an improper act or omission which contributed to Mr. Hooper's failure to obtain or maintain the qualifications for the Pay Grade 15 rate, the CBA provides for only one remedy—that Mr. Hooper be afforded the opportunity to obtain the necessary qualifications. *See* Ex. 2, Art. 31, § 2 ("If the employee lacks one or more proficiencies, skills, qualifications, or other defined requirements, they may request to be considered for an opportunity to obtain the defined requirement(s)").

34. The law is clear that where an arbitration award contradicts the explicit language of the CBA, the arbitrator has exceeded the authority granted to him, and the award is properly vacated. United States Postal Serv. v. American Postal Workers Union, AFL-CIO, 204 F.3d 523, 527 (4th Cir. 2000).

35. The Arbitrator exceeded his authority by making determinations on a matter that was not the subject of Mr. Hooper's grievance—whether he was entitled to back pay. 9 U.S.C. § 11.

36. The Arbitrator sought to enforce his own notions of industrial justice. Despite the express terms of the CBA and his own finding that he had no authority to reinstate Mr. Hooper to the Pay Grade 15 classification from June 2019 to March 31, 2021, Mr. Hooper awarded him back pay at the Specialist – Pay Grade 15 rate during this same period. The CBA makes clear that employees can only be paid at a Pay Grade 15 rate if they have the corresponding qualifications.

37. By awarding the back pay remedy, Arbitrator Fishgold changed, added to, and deleted from the CBA's terms, and thus exceeded his powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matters submitted to him was not made. Ex. 2, art. 12, § 4; 9 U.S.C. § 10. Such actions violated the CBA's admonition that arbitrators are not to act as "legislators." Ex. 1, Art. 12 § 4.

WHEREFORE, Petitioner respectfully requests that this Court vacate the Arbitrator's Award of June 18, 2021 awarding Mr. Hooper back pay from June 2019 to March 31, 2021.

Respectfully submitted,
HUNTINGTON INGALLS INCORPORATED,
NEWPORT NEWS SHIPBUILDING DIVISION

By: /s/ David C. Burton
David C. Burton (VA Bar No. 33178)
Yiorgos L. Koliopoulos (VA Bar No. 93608)
Williams Mullen
222 Central Park Avenue, Suite 1700
Virginia Beach, VA 23462
Telephone: (757) 473-5354
Facsimile: (757) 473-0395
dburton@williamsmullen.com
gkoliopoulos@williamsmullen.com
*Counsel for Petitioner*